UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| CHRISTINE L. BALLARD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-00143-JD |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Christine Ballard filed a complaint seeking review of the final decision of the Commissioner of Social Security denying her application for social security disability benefits. [DE 1]. The matter is fully briefed and ripe for decision. [DE 16, 17, 20]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

**I. FACTUAL BACKGROUND**

Ms. Ballard filed an initial claim for disability on October 19, 2015, alleging disability beginning April 10, 2014. She claimed to be disabled due to spinal stenosis of the neck and back and migraines. Her claim was denied initially and upon reconsideration. On November 9, 2017 Ms. Ballard participated in a hearing, with representation, before an ALJ. The ALJ issued an unfavorable decision denying her disability benefits and concluded that Ms. Ballard was not disabled under the Social Security Act because she had the residual functional capacity that allowed her to perform work in the economy. The Appeals Council denied Ms. Ballard's request for review, after which she filed this appeal. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir.

1

2013). Ms. Ballard seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Ms. Ballard has had a history of nasal issues and headaches predating her onset date. She has also struggled with pain in her neck, back, and knees throughout the relevant period. In 2013, she underwent a neck surgery and in 2014 was in a car accident suffering from neck and low back pain. (R. 573). Throughout the relevant period, Ms. Ballard has been obese. (R. 739). In June 2015, she underwent a fusion/refusion of vertebrae and insertion of spinal fusion device. Ms. Ballard was diagnosed with benign paroxysmal positional vertigo. (R. 856, 871). In 2016, she had knee surgery and an MRI of her back showed mild degenerative changes with no significant interval changes since 2014. (R 1085, 996).

At the hearing in front of the ALJ, Ms. Ballard and a vocational expert ("VE") testified. Ms. Ballard testified at length regarding her back, neck, and knee pain. She testified that she "can't bend" because it "hurts to bend" and it "hurts to lift." (R. 49). Her neck, lower back and knees hurt and its "hard to stand." *Id.* Ms. Ballard testified that she can sit "as long as [she] is in a recliner and [her] head has to be back to rest" and she raises her feet up. (R. 50). She can sit comfortable like this for a couple of hours. (R. 50). She testified that she elevates her feet all the time. *Id.* Ms. Ballard said she does not get much sleep during the night because when she moves, she wakes up in pain. (R. 68). She testified that she can stand in one spot for about two or three minutes before she feels weakness in her knees and back. (R. 50). If she is leaning on something, she can walk a block at a time before feeling the same weakness in her back and knees. *Id.* Also she feels pain in her shoulders and neck while she walks due to the leaning. (R. 51). Ms. Ballard testified she could lift and carry about ten pounds. *Id.*

Ms. Ballard testified that she has severe side effects from pain medication, particularly, she gets "violently sick" and vomits. (R. 55–56). She is able to take Naprozen for her migraines. (R. 56). Ms. Ballard testified that she still suffers from bouts of vertigo, however, she has learned techniques to help it subside, such as laying down for thirty minutes. (R. 57). Ms. Ballard testified that there is a plan for her to get another knee surgery, but she has not yet had it due to finances. (R. 60). She testified to getting injections to help with the pain, which can provide some relief but occasionally does not help. (R. 61). Ms. Ballard indicated that she gets migraines or headaches at least two times a month which last hours and require her to stay in a dark room. (R. 65).

When testifying to her activities of daily living she testified that combing her hair gives her troubles, getting dressed is difficult, and she loses her balance a lot. (R. 51). She said putting on a bra hurts her shoulder joints very badly and putting on her socks also hurt. *Id.* When cooking, Ms. Ballard brings all her ingredients to the table so she can sit down and assemble the meal. (R. 52). She testified that she sometimes goes out with her husband and daughter on the weekends. *Id.* She testified that she drove herself the forty minutes to the hearing, which was the longest she had driven in three or four years. (R. 46). She stated that it was painful and upon arriving early to the hearing, she stayed in her car and reclined for twenty minutes to alleviate the pain. (R. 53).

The ALJ posed three hypothetical questions to the VE during the hearing, each one including more limitations. In the decision, the ALJ assigned the hypothetical with the least amount of limitations as Ms. Ballard's RFC. (R. 70–75). The ALJ found the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could occasionally climb ramps and stairs; occasionally climb ladders, ropes or scaffolds, balance, stoop, kneel, crouch and

3

> crawl; must avoid concentrated exposure to hazards; no exposure to extreme heat, extreme cold or humidity and no operation of foot controls.

(R. 24). Based on the testimony of the VE and the assigned RFC, the ALJ found Ms. Ballard capable of working in the national economy. (R. 29).

## II. STANDARD OF REVIEW

Because the Appeals Council denied review of the ALJ's decision, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas*, 732 F.3d at 707. This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision so long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.

4

2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual

functional capacity ("RFC"), which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. Ballard has offered three arguments in support of remand: 1) the ALJ erred in evaluating her subjective symptoms testimony; 2) the ALJ erred in evaluating her extreme obesity; and 3) the ALJ erred in evaluating medical opinion evidence. The Court only addresses the first argument, as the Court agrees that the ALJ erred in evaluating Ms. Ballard's subjective symptoms, effecting the RFC analysis, therefore requiring remand. The Court need not address the remaining arguments, which will either be moot or can be addressed by the parties on remand.

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017).[1]

---

[1] The Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *2. Instead, the ALJs are reminded to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," as consistent with the regulations. *Id*. Under either SSR version the outcome in this case would be the same.

(superseding SSR 96-7p). Importantly, the "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2. Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) The individual's daily activities;
> (ii) Location, duration, frequency, and intensity of pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) Type, dosage, effectiveness, and side effects of any medication;
> (v) Treatment, other than medication, for relief of pain or other symptoms;
> (vi) Other measures taken to relieve pain or other symptoms;
> (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *7–8. However, an individual's statements about intensity, persistence, and limiting effects of the symptoms may not be disregarded solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual. SSR 16-3p, 2017 WL 5180304, at *5.

Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p, 2017 WL 5180304 at *10; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record."). An ALJ's failure to give specific reasons

7

for a credibility finding, supported by substantial evidence, is grounds for remand. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

Here, the ALJ's sole reason for not giving full weight to Ms. Ballard's subjective symptoms and their limitations was that the statements concerning intensity, persistence, and limiting effects of her symptoms were not "entirely consistent" with the medical evidence and other evidence of the record. (R. 25). The Seventh Circuit has noted that it is a recurrent error made by ALJ's to discount pain testimony that cannot be attributed to "objective" injuries or illnesses. *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (collecting cases); *see also* SSR 16-3p, 2017 WL 5180304 at *10 ("In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that . . . 'the statements about the individual's symptoms are (or are not) supported or consistent.'"). Not only is the ALJ's explanation insufficient, but it is not supported by substantial evidence. The record here contains years of medical evidence documenting Ms. Ballard's pain, pain treatment, and causes for the pain, supporting Ms. Ballard's testimony. Because the ALJ disregarded Ms. Ballard's subjective symptom testimony for being inconsistent with the record and failed to provide specific reason supporting such a finding, which is not supported by substantial evidence, remand is required.

The ALJ did not properly evaluate evidence regarding her activities of daily living. Ms. Ballard testified in detail to the pain that she experiences during activities of daily living, including dressing, cooking, standing, and walking. (R. 24–25). As explained above, Ms. Ballard testified that putting on clothing pops her shoulder joints, causing great pain and she also loses her balance frequently. (R. 51). To cook, she must be sitting, and she occasionally goes out on the weekends with her family. (R. 52). She can only walk a block and stand for a few minutes before feeling weak and in pain. (R. 49–50). To the extent Ms. Ballard's daily activities were

addressed, it was only by way of summary prior to the ALJ's finding that Ms. Ballard's symptom statements were not entirely consistent with the medical evidence. Following this conclusion, the ALJ summarizes much of Ms. Ballard's medical evidence. (R. 25–27). Throughout the summary of the medical evidence, the ALJ notes many instances of Ms. Ballard presenting to doctors with complaints of lower back, neck, and knee pain, however the ALJ never explains why these are inconsistent with Ms. Ballard's testimony. The record shows that Ms. Ballard suffered from mild degenerative disc disease and mild bilateral facet arthropathy. (R. 579, 588, 792). However, the ALJ appears to give more weight to the finding of no acute fracture or subluxations found in the medical records, yet this is not explained in the decision. (R. 25). The ALJ does not note that, from the same records, Ms. Ballard despite not having a facture or subluxations, presented with having low back pain that also radiated in both legs, causing trouble at work. (R. 792). The ALJ does not explain how the frequent instances in the record that note objective medical issues with Ms. Ballard's spine, neck, and knees, for example small disc protrusion and herniations, and degenerative changes, do not support Ms. Ballard's pain testimony. (R. 1043–44; *see also* Hospitalization and Medication Summary, R. 318–23). The ALJ frequently references Ms. Ballard's muscle strength as being intact and having a normal gait. (R. 26-27). However, the ALJ does not explain why muscle strength and normal gait correlates to Ms. Ballard's pain not being as persistent or intense as she testified. The ALJ did not provide specific reasons, supported by substantial evidence, why the record is inconsistent with Ms. Ballard's testimony and therefore the Court cannot assess how the ALJ evaluated the symptoms and remand is required. *Pepper*, 712 F.3d at 367; *Myles*, 582 F.3d at 676.

Ultimately, the ALJ's insufficiently supported assessment of the claimant's symptom testimony calls into question the soundness of the ALJ's RFC finding. The ALJ found Ms.

Ballard capable of doing light work, which requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a job is in this category when it requires a good deal of walking or standing." 20 CFR 404.1567(b). The ALJ gave great weight to the State agency medical consultant's opinion that Ms. Ballard is capable of performing light work. (R. 27). The ALJ gave little weight to the opinion of Dr. Vicari, Ms. Ballard's treating physician, that she could lift occasionally less than five pounds and rarely five pounds, walk one block or more without severe pain, sit for about four hours in an eight-hour workday, and stand or walk less than one hour in an eight-hour workday, but needs to recline during the workday and take unscheduled breaks. (R. 27, 1142). Other parts of Dr. Vicari's opinion were given great weight and included in the RFC. (R. 27). This treating physician's opinion is consistent with Ms. Ballard's subjective symptom testimony, contrary to the ALJ's conclusion. Ms. Ballard testified that she could carry about ten pounds, walk a block, stand for two to three minutes, and must elevate her legs in the recliner. (R. 50–53, 62).

The ALJ seemingly justifies the weight given Dr. Vicari because Ms. Ballard has generally, although not always, had no limping and an intact gait, no muscle atrophy and no diagnostic testing showing serious nerve root compromise or radiculopathy. (R. 27). However, the ALJ did not cite to the record to support this conclusion. The ALJ fails to explain why she disregarded Ms. Ballard's own testimony that she could carry about ten pounds when it is supported by the medical evidence from Dr. Vicari. The ALJ also reasoned that Ms. Ballard is able to go out with her daughter and husband about once a week and drove a long distance to the hearing without stopping, despite her pain. *Id.* But in doing so, the ALJ did not address how these activities necessarily translated into an ability to consistently work full-time, particularly lifting up to twenty pounds and standing and walking frequently, nor did the ALJ sufficiently

explain how the ability to perform these activities are inconsistent with Ms. Ballard's testimony concerning the severity of her pain. *Cullinan v. Berryhill*, 878 F.3d 598, 604–05 (7th Cir. 2017) (indicating that the dearth of information about what the plaintiff did, how she did it, and for how long of a period of time renders the ALJ's reliance on the various activities unreasonable); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (finding that the ALJ erred in concluding that the claimant's vacation undermined her claim of stroke-related impairments); *see also Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("[I]t is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment . . . ."). Further, while Ms. Ballard testified to driving to the hearing, it was the longest Ms. Ballard had driven in four years, and the ALJ failed to detail that Ms. Ballard needed to recline in her seat when she got to the hearing in order to help alleviate the pain. (R. 54–55).

The ALJ did not accommodate Ms. Ballard's limited range of motion with all extremities, which she testified to and is supported by the medical evidence, in the RFC. The consultative examination opinion notes that Ms. Ballard has lower range of motion than normal and "difficulty squatting." (R. 847). The ALJ does not give a weight to this consultative exam or explain why this evidence was inconsistent with Ms. Ballard's testimony. (R. 25–26). Ms. Ballard testified that it hurts to bend, her shoulders hurt from leaning, and putting on clothing is very painful. (R. 49, 51). Ms. Ballard testified to being able to stand for two or three minutes after which she feels weakness in her back and her knees, consistent with the medical record. (R. 50–51). The ALJ did not provide any explanation how this medical evidence is inconsistent with Ms. Ballard's testimony.

The ALJ's decision was silent concerning the effects of pain medication on Ms. Ballard and therefore exhibiting she failed to evaluate and consider such evidence. In evaluating a claimant's symptoms, the ALJ is required to consider side effects of medication. SSR 16-3p, 2017 WL 5180304 at *7; *see also Flores v. Massanari*, 19 Fed. Appx. 393, 399 (7th Cir. 2001) ("The side effects of medication can significantly affect an individual's ability to work and therefore should figure in the disability determination process."). Here, the issue was squarely placed before the ALJ. During the hearing, Ms. Ballard testified to her severe side effects to strong pain medications. Ms. Ballard stated she gets "violently sick," such as vomiting, and her stomach cannot "tolerate any kind of opiate." (R. 55–56). The Commissioner argues that the ALJ did not need to address Ms. Ballard's side effects because her physicians appeared to have accommodated her complaints about pain medications, because she was able to take them anyway when she needed to, and Ms. Ballard failed to show that this was a significant and continuing problem. [DE 17 at 6]. However, the significance and persistence of this problem is supported by the medical evidence. Ms. Ballard reported her aversion to pain medication to her doctors, which was documented throughout the record. (*See, e.g.*, R. 332, 335, 734, 736,768, 977, 1302, 1305, 1310). Ms. Ballard endured several alternative pain treatments since she is unable to tolerate most pain medication, further supporting her intolerance to oral pain medication as well as the intensity of her pain: lumbar epidurals (R. 826, 835, 1140, 1285); a medial branch nerve block (R. 1296, 1301, 1306); a radiofrequency ablation. (R. 1308-10); left knee injections with a note that her knee was not responsive to conservative treatment (R. 1188, 1193, 1201, 1213, 1218, 1223, 1225); and an injection for right hip bursitis (R. 961-62). Just two months prior to the hearing, Ms. Ballard's doctor, Suleman Salman, D.O., prescribed another lumbar epidural injection because the "[p]rocedure [is] medically necessary to address the

12

inflammatory, discogenic, and radicular components to patient's low back pain." (R. 1312). Ms. Ballard's ability or inability to achieve relief from her pain is critical to whether she is able to work and the ALJ failed to provide specific reason as to why her testimony, and the record supporting it, was not considered.

Overall, the ALJ's assessment of Ms. Ballard's subjective symptoms is not supported by substantial evidence. That error is not harmless. If, on remand, the ALJ decides to give greater weight to Ms. Ballard's subjective complaints and limitations, that could result in a more restrictive residual functional capacity finding. Remand is required for proper consideration of Ms. Ballard's subjective symptoms.

## V. CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: May 15, 2020

/s/ JON E. DEGUILIO
Judge
United States District Court

13